CONTINENTAL NAT. BANK OF NEW YORK *v.* CROSBY *et al.*

(*Supreme Court, General Term, First Department.* May 18, 1888.)

1. NEGOTIABLE INSTRUMENTS—ACCOMMODATION PAPER—BONA FIDE HOLDER.
    The holder of a promissory note, made and delivered for the accommodation of the payee, and by him transferred as security for rent accrued and to become due from him to the indorsee, is a holder for value, and entitled to recover thereon.

2. SAME—ACCOMMODATION PAPER—RESTRICTIONS AS TO USE OF.
    Defendant was the maker of a note delivered to the payee for his accommodation, and, as the maker contended, to be used for a specific purpose. The payee testified that the only restriction placed upon its use by him was that it should not be hawked about, and this testimony was corroborated by that of the president of plaintiff bank, as to the statements of defendant, made when he ascertained that the note was held by the bank. *Held* sufficient to justify the finding that the payee's right to use the note was virtually unrestricted, and that his indorsement of it as security for rent due and to become due was not a diversion.

Appeal from judgment on report of FRANKLIN BARTLETT, Referee.

Action by Continental National Bank of New York against Hiram B. Crosby, as indorser, and Clark Bell, as maker, of a promissory note. Judgment in favor of plaintiff was entered on the referee's report, and defendants appeal.

Argued before VAN BRUNT, P. J., and MACOMBER, J.

*Clark Bell, pro se.*, and *Edgar B. Hill,* for appellant Crosby. *J. L. Cadwalader,* for respondent.

VAN BRUNT, P. J.  This action is brought to recover upon a promissory note made by the defendant Bell to the order of the defendant Crosby, and indorsed by Crosby and transferred to the plaintiff.  The answer of the defendant Bell alleges that the note was made without any consideration, and given to the defendant Crosby for a particular use, and that it was diverted from such use by Crosby, and transferred to the plaintiff as security for a pre-existing debt due from Crosby to the plaintiff, and that Crosby paid no value therefor.  It also alleged that certain other notes were pledged as collateral to said indebtedness, and that the plaintiff had realized upon said notes last mentioned more than sufficient to pay the amount of the indebtedness from Crosby to it. The learned referee found, as a matter of fact, that the note in question was delivered by Bell to Crosby for a good consideration.  This finding does not seem to be supported by the evidence, because such evidence, both as given by Bell and Crosby, shows at most the note, as between Bell and Crosby, was an accommodation note, and Crosby gave to Bell no consideration.  Therefore, if the conclusion to which the referee arrived depended upon the finding, such conclusion must necessarily be set aside, as the finding in question does not seem to be based upon any evidence, and has been duly objected to by the defendant.  But in view of the other facts found by the referee, and which are supported by the evidence which was introduced during the trial of the action, it was not a matter of any importance, as to the right of the plaintiff to recover, whether the defendant received any consideration from Crosby or not.  The issue that was presented by the evidence was as to the diversion of the note by the defendant Crosby.  If such diversion was established, then the defense set up by the defendants became available.  If, however, such diversion was not established, and the claim of the plaintiff that it had received this note with the others as collateral security, not only for the pre-existing debt due from the defendant Crosby, but as security for future indebtedness which would necessarily arise because of the relations existing between the plaintiff and the defendant Crosby, was sustained, then the plaintiffs were holders for value, which enabled them to assert their rights as owners even against an accommodation maker.  It is true that the defendant Bell has testified to certain restrictions in regard to this note which, if they had been established to the satisfaction of the referee, would have made the pledge of the note by Crosby in the manner claimed by the bank to have been a diversion thereof.  But the difficulty with the defendants' claim in this respect is that the evidence of the defendant Crosby, and of the witness Randolph, the president of the bank, was adverse to that of the defendant Bell in respect to the circumstances under which this note came into Crosby's possession.  The only restriction placed upon the use of the note by Crosby at the time of its receipt from Bell, according to his testimony, was that it should not be hawked about; and the testimony of Randolph as to the statements made to him by Bell, at the time he called upon him at the bank in reference to this note, tended to corroborate the testimony of Crosby, because the statement which is attributed to Bell was that he did not give Mr. Crosby authority to hawk his paper about. From this conflict of testimony the referee was justified in coming to the conclusion that the restriction which it is claimed by the defendant Bell had been made had not in fact been made, and that Crosby's right to the use of the note was virtually unrestricted.

Under these circumstances, if the defendant Crosby pledged the note as security for his indebtedness to accrue to the bank, as well as the indebtedness which he then owed to the bank, such indebtedness consisting of rent due and to become due under a lease of premises made by the bank to Crosby, and the bank permitted such future rent to accrue, the bank became a holder of the note for value, and could recover thereon.

It was further claimed upon the part of the defendant that the note had been deposited by Crosby as collateral security for the payment of $1,500 of

past-due rent, and that there was no agreement whatever in reference to the note being held for the rent which was subsequently to accrue. It appears that Crosby had been the occupier of premises leased from the plaintiff for a year and three-quarters prior to the time of the pledge of this note; that the first year's rent had been paid; and that on the 1st of February, 1885, three-quarters rent, amounting to $1,500, had become due; that the bank was pressing Crosby for payment, and had notified him that, unless he made some satisfactory settlement, he would be ejected; and that thereupon he brought the notes in question, and asked the bank to discount them, and pass the proceeds to his credit, deducting therefrom the amount of rent due. This the bank declined to do, and Crosby thereupon asked if the bank would hold them as collateral security for past and future rent, which the bank agreed to do, and took the notes. Subsequently, the bank desiring to take possession of the premises then occupied by Crosby, an arrangement was made between him and the bank by which he was to give up the offices then occupied by him, and move up-stairs, into other rooms, for which he was to be charged rent at the rate of $1,000 per annum, the rental value of the premises being $1,200; the reduction being made because of his giving up possession of the premises previously occupied by him. Mr. Crosby moved into his new offices on the 15th of March, 1885, and continued to occupy them until the 1st of December, when they were taken possession of by the plaintiff, he having paid no rent whatever in the meantime. The plaintiffs claimed an indebtedness due from the defendant Crosby of $2,458.31, on the 1st of December, 1885,—$1,500 being the rent of the offices to the 1st of February, 1885; $250, rent from February 1st to March 15th; and $708.31 being the rent of the new offices from March 15 to December 1, 1885. About the 7th of May, 1886, the plaintiffs recovered, from the other notes placed in their hands as collateral, $1,838.87. At this time the interest upon the indebtedness amounted to $64.32, leaving a balance claimed to be due from Crosby to the bank of $683.76. For this amount, with interest, the referee gave judgment against the defendants. Mr. Crosby claims, upon the other hand, that there was no relation of landlord and tenant existing between the plaintiff and himself subsequent to the 15th of March, 1885, and that there was no promise on his part to pay the sum of $1,000, or any other sum, for the use of the offices into which his effects were removed in March, 1885; but that, upon the contrary, such offices were used simply as a store-room for his effects, and that there was no understanding or obligation on his part to pay rent therefor, in that he never occupied the premises personally, nor was it understood that he should pay such rent, but that he was permitted to store his effects in said premises because of his giving up of the lease to the bank of the premises previously occupied by him. The evidence of the officers of the bank, however, was such as to justify the referee in finding that the arrangement between Crosby and the bank was that he was to pay rent at the rate of $1,000 a year for the new offices occupied by him. The whole case seems to depend upon questions of fact, and the referee had ample evidence before him to justify him in coming to the conclusion that he did, except to the one point, which has heretofore been adverted to, and which is immaterial, in view of the other conclusion at which he arrived.

The court cannot interfere with the findings of a referee upon questions of fact, unless such findings are contrary to evidence, or there is a plain preponderance of evidence against them. The referee has the opportunity, which the appellate court has not, of having the witnesses before him, and hearing them testify, and of judging as to the amount of credibility to be placed upon from their demeanor and conduct upon the witness stand,—circumstances which frequently carry weight in the consideration of testimony; and it would appear from the record that, as far as the issue between the bank and Crosby in regard to the circumstances under which these notes were pledged, is concerned, the referee has come to the same conclusion as the jury did upon the

trial of the question of the liability of the makers of the other notes which had been deposited with the bank. Upon an examination of the evidence in this case, we find no support for the exceptions, except the one mentioned, which have been taken. The conclusions are sustained by the evidence; that of the defendants, Crosby and Bell, being directly at variance upon the question as to whether Crosby has made a fraudulent diversion of this note or not. Under these circumstances, this court cannot interfere with the judgment, and it must be affirmed, with costs.

MACOMBER, J., concurs.